IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| JOSEPH J. DESORMEAUX | § | |
| VS. | § | CIVIL ACTION NO. 1:13cv566 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Joseph J. Desormeaux, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Factual Background

Following a jury trial in the Criminal District Court of Jefferson County, Texas, petitioner was convicted of murder. He was sentenced to life imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Ninth District. *Desormeaux v. State*, No. 09-10-00467-CR (Tex.App.–Beaumont, 2011). Petitioner did not file a petition for discretionary review.

Petitioner subsequently filed a state application for writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order. *Ex parte Desormeaux*, Appl. No. 79,548-01.

Grounds for Review

In his original petition, petitioner asserted he received ineffective assistance of counsel because counsel: (a) failed to object to DNA evidence; (b) abandoned petitioner's defense after he was found guilty and (c) failed to call witnesses who could have provided favorable testimony, specifically: (1) Red; (2) Will; (3) Mark Rodriguez; (4) Kelly Rodriguez; (5) Nick Gonzalez and (6)

Brad Spence.

In an amended petition, petitioner asserted the following additional grounds for review: (a) he was improperly convicted based on the testimony of a "jailhouse snitch;" (b) he was improperly convicted based on tainted DNA evidence; (c) he was denied effective assistance of counsel on appeal and (d) he received ineffective assistance of counsel at trial because counsel: (1) failed to object to testimony from a "jailhouse snitch; and (2) failed to seek a continuance to obtain additional witnesses (the "Additional Grounds for Review").

Evidence at Trial

In his appellate brief, petitioner described the evidence at trial as follows:

> The State called Kurt Cullums to introduce the surveillance video from Dylan's as State's Exhibit #8. Stephanie Arens testified that she and Summer Bourque went to Dylan's to celebrate her birthday. They got there around 6:30 or 7 p.m. and talked to the bartenders. The Appellant showed up and began hanging out with them. Their discussion led to the plan to purchase Loricets. Ms. Arens identified several tattoos that Ms. Bourque had on her body for identification. Joshua Scully testified that he was working as a bartender that night on August 10, 2008. He interacted with the girls and remembers the Appellant. He saw Summer leave the bar with the Appellant. Daniel Dunman a/k/a "Opie" testified that he was bartending as well that evening. He saw the Appellant with the girls. He knew that the Appellant went to purchase Loricets for them. He saw the Appellant leave the bar with Summer Bourque.
>
> [There was testimony] that the cause of death was unknown due to decomposition of the body. After Summer Bourque was reported missing, the police obtained a name of interest, Jimmie Deshotel. Detective Robertson created a lineup concerning that named individual which led to no identification and the name Desormeaux. Police checked his last known address. Appellant was not there but someone with his name began phone conversations with authorities. On August 13, 2008, officers were dispatched to Taylor's Bayou where a decomposed body was found. The victim was identified by a butterfly tattoo which was confirmed by dental records. A search warrant for the Appellant's van was obtained and officers went to Sabine County to execute it. An arrest warrant was later obtained and Appellant was arrested in Seattle, Washington, on August 28, 2008. The location where the body was found was difficult to access. Detective Robertson confirmed that a white pickup was seen in the refuge on August 11, 2008.
>
> Detective Harrison testified that he helped locate the body. It was badly decomposed. The injuries prevented examination for sexual assault. They determined where Appellant's van was located which led to the search warrant. Harrison helped seize the van and brought it to Port Arthur for processing. Harrison had multiple phone calls with the individual claiming to be Appellant. The individual refused to come in for questioning and agreed to meet in Lake Charles, Louisiana.

Dr. Tommy Brown testified that he was the pathologist performing the autopsy. The victim was identified through dental records. The doctor described the injuries to the body. It was found nude with a rope around it. The cause of death was determined to be asphyxia by an unknown manner and means. Chad Hogan testified he photographed the body and the scene. He took custody of items recovered from the van and items retrieved from the Appellant. All items were properly transported and stayed in proper chain of custody. Appellant provided a DNA sample to Paul Noyola with the District Attorney's office. Jacob Vidrine, with Parks and Wildlife, found the body in the bayou with an alligator eating on it. He kept the animal away until authorities arrived. The body could have gotten there through the natural flow of the water or by way of animals. Tiffany Aardahl testified about the biological samples retrieved from the van. These items were photographed and entered as exhibits. Aimee Rogers testified from Orchid Cellmark as a DNA expert. She received the items from Jefferson County and ran all the tests requested. The exhibits showed a match combination of samples from the Appellant and Ms. Borque. All these test results were properly reviewed by Dr. Melanie Trapani. Andrew McWhorter testified from the Department of Public Safety DNA lab that all three submissions were tested. When compared to the Appellant's sample, each item found a match to the victim and the Appellant.

Cornelius Green, an inmate in the Jefferson County Correctional Facility, testified that he had conversations with the Appellant. Appellant told him about meeting a female. They left the club with her driving. When she wrecked the van, he hit her head on the steering wheel. He hit her on the head with an object. Appellant bragged about his story of other guys picking her up to explain her missing. He admitted to taking her somewhere and throwing her body to the alligators.

Robert Henderson, a blood splatter expert, testified that he reviewed all the photographs and the van in this case. He opined that there was no evidence on the dashboard or the steering wheel. There was impact stain evidence from the backseat. There was impact stain evidence found on the passenger side of the van. There was an apparent struggle in the backseat with blows close to the passenger side window. There were multiple blows from behind the seat. The castoff evidence was likely caused from a hand not an object.

The defense presented Shawn Jones . . . an inmate who testified that Green was looking for a time cut. Green admitted that he had lied against Appellant. Alvin Gray, another inmate, testified that Green was lying. Daniel Hellwig, with Sorensen Forensics, testified that he reviewed the DNA findings. He claimed the DPS findings were biased because they used inconclusive markers. He found an increase in injection time to manipulate the findings. He applied procedures that were adopted the day after the report was made.

Glenda Matthews, Appellant's sister, testified that Appellant and Summer Borque were by her house the night of August 10, 2008. Appellant was drunk, and Summer was there willingly. They left with Summer driving the van after midnight. The witness saw Appellant the next day and [he] appeared normal. She talked with police and provided them the jeans he was wearing that night.

Brian Simon testified that he lives near the bayou. He has a boat and three wheelers. The police same to his house and arrested him on September 10, 2008. They found him hiding in a refrigerator. He told police that Appellant came by his house to buy

Loricets. He was out that night driving his three wheelers in the marsh and saw a white truck. His DNA was on the van because he drove it when they were working.

Cheryl Simon testified that Appellant came to the house to buy drugs. She confirmed that she and her husband were riding three wheelers in the marsh the night Summer went missing. They did see a white ruck leaving the levee around three in the morning.

The Appellant testified on his behalf. Appellant was with family at the Pine Tree Lodge on August 10, 2008, until 3:30 that afternoon. He went to Dylan's around 7:00 p.m. He began talking to the two girls at the bar. He agreed to buy pills for Summer and one of the bartenders from Brian Simon. He bought 11 pills which were divided between Opie and Summer. He left the bar with Summer to keep partying. She wanted more drugs so they went to his sister's house to borrow money. Brian took his van and Summer to go buy drugs. Brian did not come back with Summer. Appellant noticed blood in his van and on his shoes. He tried to call Brian to see what happened. He went to his camp in Sabine County awaiting a response from Brian. Friends picked him up and took him to Lake Charles, Louisiana. He ultimately went to Seattle for a job.

Under cross examination, Appellant admitted he had assaulted Kathy Davis and was charged with false imprisonment. Appellant believes Brian Simon killed Summer Bourque. Appellant told others a different story while in custody. The story was that he got into a fight with some guys in a white pickup in a convenience store. The victim left with them. Appellant felt like he did not have to talk to the officers and expressed that he would always run from the police. Appellant left Port Arthur because his car and tools were taken by the police.

At the punishment hearing, Kathy Davis testified that she went with Appellant in his van to buy groceries. Ms. Davis met him at her work and needed a ride. Appellant grabbed her and threw her in the back of the van. Ms. Davis broke her rib. Appellant tore her clothes off and tried to rape her. Ms. Davis escaped half dressed after Appellant ejaculated into her hair. Appellant's attorney had no questions for the witness. No mitigation was offered in punishment and no argument was made at closing.

<u>Limitations</u>

The respondent asserts that the Additional Grounds for Review are barred by the applicable statute of limitations

A one year period of limitations applies to a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. The period of limitations begins to run on the date on which the judgment of conviction becomes final. Petitioner's conviction was affirmed by the intermediate appellate court on August 31, 2011. His conviction therefore became final on 30 days later, on September 30, 2011, when the time period for filing a petition for discretionary review expired.

The period of limitations therefore began to run on September 30, 2011, and ran for 297 days, until July 25, 2012, the date on which petitioner filed his state application for writ of habeas corpus. The running of the period of limitations was tolled while the state application was pending. *See* 28 U.S.C. § 2244(d)(2). The period of limitations began to run again on August 7, 2013, the date on which the state application was denied, and expired 68 days later, on October 14, 2013. As the original petition for writ of habeas corpus is dated August 13, 2013, the claims asserted in the original petition were timely. However, the amended petition is dated April 9, 2015, after the period of limitations expired. As a result, the Additional Grounds for Review were asserted after the period of limitations expired.

However, before concluding the statute of limitations bars consideration of the Additional Grounds for Review, it should be considered whether Federal Rule of Civil Procedure 15(c) applies so as to cause these grounds for review to "relate back" to when the original habeas petition was filed. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading . . . ." FED.R.CIV.P. 15(c)(1)(B).

Claims asserted in an amended petition do not automatically related back merely because they arose out of the same criminal proceeding. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Claims raised in an amended petition do not relate back if they assert "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id*. Further, new claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance of counsel claims merely because they violate the same constitutional provision. *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009).

The Additional Grounds for Review do not relate back to the original petition. The Additional Grounds for Review are either completely new, based on a different legal theory or supported by facts that differ both in time and type from those set forth in the original motion to vacate. Consideration of the Additional Grounds for Review is therefore barred by the statute of

limitations.[1]

Petitioner does state he is actually innocent of the offense of murder. In *McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013), the Supreme Court held that actual innocence may provide a "gateway" for consideration of otherwise time-barred claims. An actual innocence claim requires a petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). However, it is not the mere allegation of innocence that will open such a "gateway;" instead, a petitioner seeking to avoid the limitations bar must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *McQuiggin*, 133 S.Ct. at 1936. In other words, an "actual innocence" exception to the limitations bar will only be found if the evidence presented by the petitioner convinces the court that "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Id.* at 1933.

The evidence petitioner describes which supports his claim of innocence does not appear to be new. Nor is it sufficient to establish that no reasonable juror could have convicted petitioner of murder. As petitioner has failed to demonstrate that new evidence establishes he is actually innocent, he may not proceed through the gateway provided by *McQuiggin*.

Procedural Bar

The respondent assert that the second ground for review in the original petition, that counsel abandoned petitioner's defense after he was found guilty, should be dismissed as procedurally barred.

---

[1] Petitioner seeks to avoid the limitations bar by relying on *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). Under *Martinez* and *Ryan*, the ineffectiveness of state habeas counsel may excuse a petitioner's procedural default of a claim of ineffective assistance of counsel. *Murphy v. Davis*, 732 F. App'x 249, 256-57 (5th Cir. 2018). However, neither decision applies to the limitations period applicable to a petition for writ of habeas corpus. *Lombardo v. United States*, 860 F.3d 547, 557-58 (7th Cir. 2017); *Arthur v. Thomas*, 739 F.3d 611, 630-31 (11th Cir. 2004).

A state prisoner must normally exhaust all available state remedies before he can apply for federal habeas relief. *See Ex parte Royall*, 117 U.S. 241, 251 (1886); 28 U.S.C. §2254(b) and (c). To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the highest state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). A Texas prisoner may present claims to the Court of Criminal Appeals, the highest state court, in either a petition for discretionary review or a state application for writ of habeas corpus.

A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A procedural default also occurs when a prisoner fails to exhaust available state remedies and "the court to which the prisoner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred." *Id*. at 735, n. 1. Before a federal court may consider a procedurally barred ground for review, the petitioner must show cause for the default and actual prejudice resulting from the alleged violation of federal law. *Coleman*, 501 U.S. at 750.

In *Ex parte Barber*, 879 S.W. 2d 889 (Tex.Crim.App. 1994), the Texas Court of Criminal Appeals announced that it would as a rule dismiss as an abuse of the writ a successive state application for writ of habeas corpus which raised issues that existed at the time a prisoner filed his initial state application. The United States Court of Appeals for the Fifth Circuit subsequently concluded Texas courts were regularly and strictly applying the abuse of the writ doctrine and that the doctrine could therefore be relied upon as an adequate and independent state ground forming the basis for application of the procedural default doctrine. *Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

As stated above, petitioner did not file a petition for discretionary review. In his state application, petitioner did not assert he received ineffective assistance of counsel because counsel

7

abandoned his defense after he was found guilty. Petitioner therefore did not present this ground for review to the highest state court. As the Court of Criminal Appeals would not consider a second state application that asserted this ground for review, and as petitioner has not shown sufficient cause and prejudice for failing to present this ground for review to the highest state court, consideration of this ground for review is procedurally barred.

Petitioner seeks to avoid the procedural bar by relying on *Martinez* and *Ryan*, *supra*. Under these cases, a petitioner may meet the cause element needed to avoid a procedural bar if he shows that an ineffective assistance of counsel claim is substantial or, in other words, has some merit. *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir 2013). An ineffective assistance of counsel claim is insubstantial if the claim "does not have any merit" or is "wholly without factual support." *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014).

During the punishment phase of the trial, the prosecution called Kathy Davis to testify. Ms. Davis stated that in 1997, petitioner, while they were traveling, threw her into the back of the van, injuring her. She testified petitioner attempted to rape her, but that she fought him off and escaped. The prosecution then introduced into evidence documents relating to petitioner's prior convictions. The defense presented no evidence. The prosecution made a brief closing argument, which did not request a particular punishment. Defense counsel did not make a closing argument. Petitioner was sentenced to life imprisonment.

Petitioner faults counsel for doing nothing during the punishment phase of the trial. He states counsel was ineffective for failing to conduct a full investigation regarding mitigation. He states counsel could have called individuals who testified previously who could have testified regarding positive aspects of petitioner's character.

As described in detail below, in order to establish a claim of ineffective assistance of counsel, a petitioner must establish both deficient performance on the part of counsel and that counsel's errors resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To show prejudice under *Strickland* in a sentencing context, a petitioner must show there is a reasonable probability

that but for counsel's errors, the sentence he received would have been significantly less harsh. *Miller v. Dretke*, 420 F.3d 356, 365 (5th Cir. 2005).

The evidence and the testimony of Ms. Davis is described above. In addition, the jury was informed of petitioner's prior convictions. The only evidence petitioner describes that counsel should have presented was the testimony of certain unspecified individuals regarding positive aspects of petitioner's character. He does not state what mitigation evidence further investigation by counsel might have revealed.

In light of the evidence presented to the jury during the guilt/innocence phase of the proceedings, and in light of the testimony of Ms. Davis and petitioner's prior convictions, petitioner has not established that this claim of ineffective assistance of counsel is substantial. Petitioner has not shown he suffered prejudice because there is not a reasonable probability he would have received a significantly less harsh sentence if counsel had presented the evidence petitioner describes. As a result, he may not avoid the procedural bar with respect to this claim. Moreover, even if it was assumed that this claim was not procedurally barred, petitioner has not shown prejudice resulting from counsel's alleged errors and would therefore not be entitled under *Strickland* to relief on the merits.

<u>Remaining Grounds for Review</u>

*Standard of Review*

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite

to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951.

*Ineffective Assistance of Counsel*

A. Legal Standard

In order to establish an ineffective assistance of counsel claim, a petitioner must prove counsel's performance was deficient, and that the deficient performance prejudiced petitioner's defense. *Strickland, supra*, 466 U.S. 668 (1984). Because a petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68

F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id.*; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, a petitioner must prove counsel's performance was objectively unreasonable in light of the facts of the case. *Strickland*, 466 U.S. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, a petitioner must also show prejudice resulting from the inadequate performance. *Strickland*, 466 U.S. at 691-92. A petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating the claim on direct review of a federal conviction. *Ritcher*, 131 S.Ct. at 785. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Even if a petitioner has a strong case for granting relief, that does not mean the state court was unreasonable in denying relief. *Id*.

B. <u>Application</u>

1. <u>Failure to Object to DNA Evidence</u>

Initially, petitioner faults counsel for failing to object to the introduction of DNA evidence offered by the prosecution. He states that counsel had plenty of time to file a motion seeking the exclusion of the evidence or to at least get a second opinion. While he acknowledges a DNA expert did testify as part of the defense's case, he states that the expert's testimony went over the jury's head because it was too detailed and technical.

Prior to trial, defense counsel filed a motion asking the court to appoint an expert to test evidence for DNA purposes. This motion was granted. The court, in response to another motion, approved the expenditure of additional funds to permit the expert, Daniel Hellwig, to testify at trial.

During his testimony, Mr. Hellwig stated he had several concerns with the DNA interpretations introduced by the prosecution. He also stated there was a bias in a particular step taken by the Texas Department of Public Safety. Specifically, he faulted the laboratory for using inconclusive markers to arrive at a DNA mixture interpretation. Further, he states the laboratory improperly classified a sample as conclusive when it matched a known sample and inconclusive when it did not match a known sample. He also testified the laboratory used some markers when it was not clear that a particular sample was DNA. Mr. Hellwig concluded by stating he had a question in reference to the laboratory's results of the DNA testing. In addition to presenting Mr. Hellwig's testimony, defense counsel cross-examined the prosecution's DNA expert witness at length.

Petitioner has failed to describe a sufficient basis under which counsel could have successfully excluded the prosecution's DNA evidence entirely. While the defense's expert called into question certain aspects of the evidence, these questions were insufficient for the court to have determined the DNA evidence could not be presented. The testimony of Mr. Hellwig, and counsel's cross-examination of the prosecution's expert challenged the prosecution's DNA evidence and provided the jury with reasons to question the reliability of the DNA evidence. As a result, counsel's performance with respect to the DNA evidence did not fall below an objective standard of reasonableness or cause petitioner to suffer prejudice. The rejection by the state courts' of this ground for review was therefore not contrary to, or an unreasonable interpretation of, clearly established federal law.

3. <u>Failure to Call Witnesses</u>

Petitioner also contends counsel should have called certain additional witnesses to testify on his behalf. He states Brian Simon testified that he, his wife and two friends, Red and Will, were in

the marsh in the area where the victim's body was found on the night she went missing. He states counsel should have attempted to contact Red and Will to determine what their testimony might have been. He also states Mark and Kelly Rodriguez were willing to testify to the statements made by Brian Simon about using the defendant's van on the night the victim disappeared. In addition, petitioner asserts Brad Spence gave statements to a defense investigator contradicting Mr. Simon's testimony and stating Mr. Simon said the victim was in his house on the night in question. Finally, petitioner states Nick Gonzalez made a statement to a defense investigator indicating Mr, Simon had an urgent need to get his boat cleaned after that night.

Complaints of uncalled witnesses are not favored in federal habeas review because the presentation of witnesses is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citing *Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008)). To prevail on an ineffective assistance of counsel claim based on counsel's failure to call a witness, the petitioner must identify the witness, demonstrate that the witness was available to testify and would have done so, set out the contents of the witness's proposed testimony and show that the testimony would have been favorable to a particular defense. *Id*. (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)). The quirements of showing availability and willingness to testify "[are] not a matter of formalism." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). A petitioner must present evidence on these points as part of the burden of proving trial counsel could have found and presented witnesses, including expert witnesses. *Id*.

With respect to Messrs. Spence and Gonzalez, petitioner has submitted no evidence demonstrating they were available and willing to testify. He has therefore failed to satisfy the requirements set forth in *Day* regarding these individuals. Regarding Red and Willie, there is no indication as to what testimony these men would have provided. As a result, petitioner has not shown he suffered prejudice as a result of counsel not attempting to locate them.

Mr. Simon was called by the defense to testify. He stated he never got into the vehicle with petitioner and the victim. When asked to explain why his DNA was found on the steering wheel, he stated that he had previously been in the van when he and petitioner were doing a job. He also testified he saw a white Chevy truck on the levy on the night of the disappearance. He later saw the white truck leave the area.

In the statement petitioner provides from Mr. Rodriguez, he states Mr. Simon told him he was in the back of the vehicle getting his tools out and was worried his DNA might be in the vehicle. In her statement, Ms. Rodriguez states Mr. Simon indicated he was worried his fingerprints might be in the van because he had retrieved his tools from the van. She also stated Mr. Simon told her that on the night of the disappearance he had used petitioner's van to get drugs for him, which was also why he was worried about his fingerprints being in the van.

Mr. Rodriguez's statement is not significantly inconsistent with the testimony Mr. Simon gave at trial. As a result, it cannot be concluded petitioner suffered prejudice as a result of Mr. Rodriguez not being called to testify. In contrast, testimony that Mr. Simon drove the vehicle on the day or night of the disappearance would have, at the least, expanded on the testimony Mr. Simon provided. Testimony from Mr. Rodriguez would have therefore been beneficial to petitioner. However, in light of the other testimony at trial, there is not a reasonable probability the result of proceeding would have been different if Mr. and Ms. Rodriguez had testified in a manner consistent with their statements. Petitioner therefore did not suffer prejudice because they were not called. Moreover, as the respondent points out, testimony by Mr. and Ms. Rodriguez regarding out of court statements by Mr. Simon would have constituted inadmissible hearsay under Texas Rule of Evidence 801. Counsel was not ineffective for failing to call witnesses to provide testimony that would have been hearsay.

For the reasons set forth above, counsel was not ineffective to failing to investigate and call to testify the individuals named by petitioner. As a result, the state courts did not act contrary to, or make an unreasonable determination of, clearly established federal law when they rejected this

ground for review.

### Recommendation

This petition for writ of habeas corpus should be denied.

### Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

**SIGNED this the 14th day of June, 2021.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE